Mr. Gray, when you're prepared, please proceed. Your Honor. May it please the Court? Thank you, Your Honor, Chief Judge, Your Honors. My name is Gerald Gray. I represent the appellate, Ms. McQuiston, here in this matter today. And we're here on a few distinct issues. The trial court's use of a ruling on a motion in limine to reconsider and ultimately reverse its summary judgment ruling, Your Honor. In its original order, the trial court found sufficient evidence in the court rule and stated, Walmart has not established that there is no genuine issue of material fact as to whether a dangerous condition existed. The court also found in its order that McQuiston had produced enough circumstantial evidence to permit a jury to reasonably infer a dangerous condition caused her to be injured, Your Honor. If I may back up, I guess I can state a few of the facts in this case. Of course, this matter involves a slip and fall. A slip and fall is in this circuit. There's established case law on what's necessary and what those elements are in regards to permits liability on a slip and fall. The existence of a dangerous condition. The defendant knew or, by ordinary care, should have known of the condition. The defendant failed to use ordinary care in removing or warning of the dangerous condition and that condition caused an injury. In this particular case, there's video evidence that shows that Walmart had not gone into the restroom and conducted any safety sweeps or cleanings within an hour before the accident. We say that because Walmart, in this matter, produced a two-hour video one hour before the accident, one hour after. A reason for reconsidering? Say that, Your Honor. What was the court's reason and rationale for reconsidering? Your Honor, in their second order, they stated that there was no evidence that a dangerous condition existed. I guess I'm still trying to figure out exactly what their actual basis was. Because if the court looks at the court's original order denying summary judgment and then their second order where they granted summary judgment, it seems that the court switched courses on their belief as it pertains to whether or not enough evidence existed for summary judgment to be applicable. In their original order, they stated that there was plenty of circumstantial evidence and plenty of evidence to present this matter to a jury. Was there a motion to reconsider or was this a suspente? This was based upon a motion to eliminate a ruling, Your Honor. There was a pretrial hearing that took place in December for a trial that was scheduled in January of 2022. And in that pretrial hearing, Walmart filed a motion to eliminate to exclude evidence of prior falls. I think there was 53 prior falls, slip and fall incidents at this particular store over a three-year period. And the court granted Walmart's motion to eliminate as it pertains to those prior injuries, prior incidents. And this matter was ready to proceed to court. Did the original summary judgment ruling depend at all or rely at all on those 50-plus prior incidents? The judge's ruling did not at all rely on those, Your Honor. In fact, the court stated in its original order, it stated that there was enough evidence based upon the existence of the slip and fall cone, the safety cone in the entrance of the women's restroom, along with Walmart's policies to clean every hour, even though the company Walmart, their company policy is to clean every two hours. Walmart's corporate rep testified that because of the condition that the restroom in this particular location is normally in after two hours, their policy was to clean it every hour because it needed that. And so the court found that based upon Walmart's policies and the existence of the safety cone, that there was sufficient evidence to conclude that a dangerous condition existed. So the court relied upon that. And then the court just referenced the other falls after it had already established in its order that there was sufficient evidence for this matter to proceed to trial. I have a question about the safety cone. I understand it could establish that Walmart knew or should have known about the condition. But floors have to be mopped, right? And so the cone is there for a reason, which is to let people know, hey, you may need to be careful when you enter the bathroom. I'm wondering whether that sort of helps one part of the claim. But maybe the district court realized, and maybe I'm speculating here, that the cone may actually cut against a negligence claim, given that there was a warning place in front that the floor might be wet. And, Your Honor, I don't know that the court necessarily ruled upon that. But I believe that even if the court is going to take that approach, then it would be a contributory negligence factor, Your Honor. So in Missouri, of course, an individual can be 99 percent at fault and still recover for 1 percent. So therefore, if the safety cone court is going to say, hey, well, the safety cone is there, so it's warning you that there's a dangerous condition, then proceed at your own peril. Then that's still for a jury to determine how much fault Ms. McQuiston should be attributed to, not whether or not a dangerous condition existed. Because Walmart's corporate representative testified that the presence of a safety cone is only there for wet surfaces, spills, leaks, some sort of dangerous condition. And the fact that that safety cone was there for an extended period of time indicates that there was some sort of dangerous condition that was present. It was not present in the There's video evidence of both the entrance to the men's and women's restroom. There's no cone at the men's restroom. It's only inside the entrance of the women's restroom. And they did not shut down this restroom. They did not state they didn't place anyone on guard for the restroom to warn. So therefore, there was no indication as to that no one could proceed in this restroom. So again, that would be a contributory negligence factor, Your Honor, not a bar from jury at all. And Missouri is one of those States that allows, I think it's comparative negligence, pure comparative negligence. One percent is enough. In some States, it's a 50 percent minimum. Yes, Your Honor. Yes, Your Honor. So Missouri is one of those States, Your Honor. And again, a motion to eliminate is not a proper vehicle for summary judgment. In fact, there was a case that was cited, and it's persuasive. It's not from the circuit. It's a Maryland case from 1987. But the court found that motion eliminates are not part of federal rules of civil procedure. But there are three different types of motions that are used as a device to narrow or fix the issues to be tried. And those are motions to dismiss, motions for judgment on the pleadings, and summary judgment motions. Now, did the court actually make the ruling based on the motion in limine or did the court, once it ruled on the motion in limine, excluding the prior incidents, say that that took out evidence that would have enabled the claim to proceed?  This is, again, a unique circumstance. We have not found any case law. I know in Walmart's brief, they didn't recognize any case law, and I have not been able to locate any as well, where a court has ruled upon a motion to eliminate and used that as a basis to reconsider summary judgment. Because, again, motion eliminates are preliminary issues as it pertains to trial matters. But a door can be opened at trial to bring up, to change the court's ruling on those motion eliminates. There are other ways to get the evidence in. And in our particular case, Your Honor, the notice issue was not necessarily a factor. There were witnesses that were going to testify as it pertains to the dangerous condition, the water on the floor, Your Honor. And so the motion eliminate factor, as it pertains to the prior incidences, that was not sufficient for a court to say, well, we found that there was a dangerous condition based upon Walmart's policies and procedures and the existence of the safety cone. However, now that we've decided to exclude evidence of prior falls, which was not taken into consideration, when we found that there was sufficient evidence for this matter to proceed at trial, we will now change our course in regards to how we view the evidence in this case. And counsel reached out to the court for guidance on what the court exactly was looking for, and none was provided. In fact, that request was denied for the parties to confer with the court to determine exactly what the court was looking for. Your Honor, I know I'm getting short on time, so I would like to preserve a few moments. But before I sit down, I want to answer any questions you guys may have right now. Thank you. Mr. Reeves. Thank you. May it please the Court. John Reeves for Walmart Stores East, LLP. As tragic as this case is, the fact remains that my friend, Mr. Gray, failed to carry his burden of demonstrating either the existence of a dangerous condition below or that even assuming such a condition existed, that my client had either actual or constructive notice of such a dangerous condition. And I think it's important to remember procedurally while this is a relatively unusual situation where a trial court reconsiders a previous denial of summary. What was the mechanism of the reconsideration? I apologize? You described the mechanism of the reconsideration. How did this come about? Okay. So, Your Honor, what happened was trial counsel for Walmart below filed a motion to eliminate, following the denial of summary judgment, to exclude evidence of prior bad acts. The trial court granted that motion. It then, several weeks later, entered into order sua sponte, asking the parties to brief whether it should reconsider its previous denial of summary judgment on that matter. But I think it's important that we don't miss the forest for the trees here. This Court may affirm the granting of summary judgment on any grounds, even on grounds not raised below. And the fact is, even if one considers the alleged hearsay statements of Ms. McQuiston, who tragically died a month after this, summary, while circumstantial evidence can be used to establish the existence of a dangerous condition in slip-and-fall cases under Missouri law, that cannot allow speculation to come in. Well, wasn't the basis of the initial denial of summary judgment, would involve the presence of the markers stating that there was a dangerous condition? Yes, Your Honor. And the court says, well, that's there, that's enough. Walmart knew something was there, that somebody put it there, because perhaps they were going to get a bucket or mop and repair. That that was enough. Why didn't that remain sufficient to keep summary judgment inappropriate? Your Honor, I will concede that the trial, the district court's two orders below, initially denying summary judgment and then subsequently reversing and granting summary judgment, are a bit inconsistent on this point. But it is my position that the original order denying summary judgment is actually wrong as a matter of law. What the evidence shows below is that there was a cone outside of the bathroom at the time that this happened. You know, you have that little cube, that square entryway, and then you turn left to go into the door. That is where the cone was. It was Walmart's policy to put a cone either when a place was being cleaned or if there was a spill. And we have multiple witness testimonies. I will get to the excluded evidence of Mr. Oliver in a moment. But multiple witnesses, at least three witnesses who went into the bathroom after Ms. McQuiston fell, multiple witnesses said that they did not see any water in the bathroom when they saw her lying there. And, again, I admit this is a terribly tragic case. Ms. McQuiston fell, she twisted her ankle, her bone was sticking out, and there was blood on the floor from that. Three witnesses went in, Patricia Samuel, Ms. McQuiston's daughter. She went and saw blood on the floor but did not see any water on the floor. Then the second individual, Jimmy Williams, a firefighter who went in to treat Ms. McQuiston, he explicitly testified that he looked to see if there was any water on the bathroom floor at that time and saw nothing. He even said he checked to see if one of the toilets was leaking. He didn't find anything. And then Maria Kale, Walmart's corporate representative, the first member of Walmart's team who went in to assist Ms. McQuiston, not only did she testify she didn't see any liquid on the ground other than Ms. McQuiston's blood, but she explicitly testified that she had gone into that bathroom earlier that day and did not see any problems with that and there had been no reports of any problems. So the fact is that that cone could have been there, and I will admit the record does not establish why that cone is there. I want to be very upfront with the Court about that. But this is where we go into speculation. That cone could have been there because of a variety of reasons. It could have been there for a liquid spill in the enclave as opposed to in the bathroom itself. Didn't Walmart's policy provide some basis for it being there? That it was there because Walmart had acknowledged that there was something about which customers ought to be cautious? It could, but the problem is we, even if that's the case, we don't know where that liquid was. The problem is that that liquid, this is where we really get into speculation. Every Missouri case I have found, Missouri State case I have found where they say you can use circumstantial evidence to support a slip and fall. Even where it isn't clear what the outcome is. Not at this point, Your Honor. I don't believe so because the leap is too far. Even if you take Ms. McQuiston's own hearsay statement, she said she was an elderly woman suffering from cancer. She stood up, she slipped and fell while standing up. She did not say anything about water. We have multiple witnesses. Every single witness who went in there testified that, that was admitted into evidence said they saw no water there, in there. And even assuming that there was water in there, it isn't clear where the water was. Again, every single Missouri State case I have seen on this where there's reports of, have involved actual reports of objects being in a, in an aisle, or the individual who slipped saying that he, even though he could identify the object, he felt something under his shoe slipping. That is not what we have here. The only person who did claim to, claim to present evidence that there was water inside the, the bathroom, Kyle Oliver, that, that evidence is inadmissible as a matter of law because, and I need to clarify a procedural merit here. Walmart disclosed Kyle Oliver to opposing counsel in May of 2021 before a summary judgment was ever made. He never deposed, he never deposed Oliver. We never deposed him. And under Rule 26E, opposing counsel has a duty to supplement and to report any additional statements that he may be aware of. He then, after summary judgment was denied, got a recording statement from Mr. Oliver. But even after obtaining that, he did not supplement his Rule 26E disclosures, which the court's pretrial order also required. We did not even know of Mr. Oliver's testimony until, until opposing counsel filed his motion to reconsider the granting of summary judgment. We did not even know that. So even if, so, so my point is that this was not disclosed in accordance with the rules of discovery. This, this, even if he had, when the court asked for reconsideration of summary judgment, attempted to do this, it still would have been inadmissible because he had not provided Walmart notice to this in his supplemental discovery procedures at this point. He gave us no opportunity to depose him. He didn't even inform us of Mr. Oliver's recorded statements until April, which is, which is about four months after the, the, when he, when he took the recorded statement. So, again, this is a very tragic case. No one's, no one's denying that. But if we were going to hold that liability exists here, it would basically be holding that the very existence of a cone by itself, without anything else, is sufficient to establish the existence of a dangerous condition. And that is just, I have not found a single Missouri case that goes that far. And it just seems to be a bridge too, a bridge too far. And at this point, unless the court has any other questions, I would ask that, I would ask that this court affirm. Thank you, Your Honors. May it please the Court, Your Honors. Thank you. Just to follow up on a few items that my dear friend, Mr. Reeves, has stated in his argument. First off, in regards to the orders being inconsistent, Walmart concedes that the orders from the trial court are indeed inconsistent. And the director from the court was to specifically brief the issue on Motion Eliminate 10. They did not indicate for parties to brief any other issue outside of how Motion Eliminate 10 might affect this matter in general. Motion Eliminate 10 only, not summary judgment, not any evidence, not any other factors. So that direction and opportunity was never given to the parties. In regards to testimony, in regards to what multiple witnesses testified. Multiple witnesses testified that they did not recall seeing anything on the floor other than the blood. They were focused on the amount of blood that was on the floor. The amount of blood, the amount of blood. Not that they did not see any waters. In fact, all of the witnesses testified that they did not move Ms. McQuiston. So they could not tell what was under Ms. McQuiston at any time while she was on the floor. And nobody checked Ms. McQuiston after, I'm sorry, checked the floor, according to Walmart, after, I'm sorry. I made a mistake because I don't want to misstate. Walmart stated that they checked the restroom after Ms. McQuiston was transported out. They cleaned the restroom. They did not take photos, which is, again, inconsistent with their policy. They're supposed to preserve the scene and photograph and document the scene. They did not do that. There was evidence or video of a Walmart employee going in with tools right after Ms. McQuiston was transported out, which would indicate that there was some sort of issue that needed to be cleaned. Again, these are all speculation. But the court ruled that based upon that evidence, a jury could infer that a dangerous condition existed. Was there a saying the tool was a drill? There was a drill, Your Honor, and again Was there ever any allegation or investigation as to whether there was a structural problem in the stall or? Walmart denies that there was ever any issue. And they don't, and their corporate rep did not acknowledge as to why that employee went in with the drill after the fact or why other things occurred after Ms. McQuiston was taken out of there. Again, those are answers that would be left for a jury to infer as it pertains to the existence of the dangerous condition. Now, as it pertains to Mr. Oliver, Mr. Oliver was the first responding EMT. And the parties had stipulated to the use of the medical records without any issues. And in Mr. Oliver's EMT records for treatment, he indicated that Ms. McQuiston had indicated to him that she had slipped and fell on water. Those are records, and he also indicated and was expected to testify that, as it pertains to those records, the use of those records and the information that they obtained from patients when they are treating them is based upon it determines their course of treatment. So therefore, if Ms. McQuiston had stated that she had stumbled and fell versus slipped and fell, that would change how they treated her injuries. Because one would indicate that she's got some sort of dizziness, whereas the other does not. So those are important factors. And Walmart stated that they did not have an opportunity to depose Mr. Oliver. In fact, Walmart concedes that they interviewed Mr. Oliver at some point long before plaintiff's counsel. Walmart indicated that they took a statement from Mr. Oliver somewhere during the course of discovery. That was never turned over. That was never disclosed. However, Did you bring that to the district court's attention? Yes, Your Honor. In fact, that was in our original motion as it pertains to a reconsideration because they argued prejudice. There was no prejudice. In fact, they Did you depose Mr. Oliver? We did not depose Mr. Oliver. In fact, I did not speak to Mr. Oliver until 12 days before trial was set just to get a preliminary, just to get him set for his trial testimony. And that's when he disclosed to us about the slipping and falling, about the existence of water. So therefore, Walmart knew of this information. And trial was moved from January. So this issue as it pertains to the motion to reconsider, that only came about because Walmart's counsel got the trial moved because of COVID a week before. So this matter would have never come up in a motion. It would have been trial issues that would have been resolved. I see that I've used my time. I don't want to go over. But if the court has any questions for me, I would welcome those. Otherwise, I thank you for your time. Thank you, Mr. Gray. Thank you. Thank you also, Mr. Reeves. The court appreciates both counsel's participation and argument before the court this morning.